Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2703 | **DATE** | 2/4/2004 |
| **CASE TITLE** | ABE SCOTT, et al. vs. CITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' joint motion for summary judgment [28-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | 41 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 2/4/2004 | |
| CB | courtroom deputy's initials | | date mailed notice PW | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**FEB 0 5 2004**

ABE SCOTT, et al.,                )
                                  )
            Plaintiffs,           )   No. 03 C 2703
                                  )
     v.                           )   Suzanne B. Conlon, Judge
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

Abe Scott and his wife, Shirley Scott (collectively, "plaintiffs"), sue Chicago Police Officers Frederick Hasenfang, David Montes, and Brian O'Leary (collectively, "defendant police officers") and the City of Chicago ("the city") pursuant to 42 U.S.C. § 1983. Specifically, plaintiffs allege that the officers conducted a warrantless search of their residence in violation of the Fourth, Fifth and Fourteenth Amendments (Count I). Count I also alleges that the officers' misconduct was part of the city's policy or custom of failing to properly train or discipline officers. Count II alleges the officers conspired to deprive plaintiffs of their constitutional rights. The officers and the city jointly move for summary judgment pursuant to Fed. R. Civ. P. 56(c).

## BACKGROUND

All facts are undisputed unless otherwise noted. On the evening of February 9, 2002, plaintiffs planned to attend a party at a friend's house in Chicago Heights. Pl's Facts at ¶ 6. Earlier that year, plaintiffs purchased a home alarm system from ADT Security Services, equipping every door with a contact sensor and the interior hallway with a motion detector. *Id.* at ¶¶ 2-3. The alarm system could be controlled from both a wall unit and a remote control; the

1

H\

remote control contained a manually activated panic button. *Id.* Before leaving for the party, plaintiffs armed the system. However, on the way out of the house, Shirley Scott tripped the burglar alarm. *Id.* at ¶ 8. Plaintiffs were already outside when they realized the alarm was going off. In a hurry to leave for the party, Shirley Scott attempted to turn the alarm off with the remote control, instead of returning to use the inside control pad. In doing so, she accidentally activated the panic alarm instead of pressing the off button. *Id.* at ¶¶ 8-9. Unaware of the mistake, plaintiffs left for the party.

The alarm alerted ADT. *Id.* Pursuant to plaintiffs' prior instructions, ADT contacted Shirley Scott's son, Darion Knight. *Id.* Knight, in turn, called Shirley Scott to inform her that the alarm was going off. *Id.* Shirley Scott immediately contacted ADT to report that it was a false alarm and that she must have triggered the panic alarm by mistake. *Id.* at ¶ 9. In the meantime, ADT contacted the Chicago Police Department at 8:34 p.m. and advised that a panic alarm had been triggered at plaintiffs' residence. *Id.* at ¶ 11. At 9:03 p.m., the police dispatcher contacted Officer Hasenfang and advised him to respond to the panic alarm at plaintiffs' home. *Id.* at ¶ 12. The dispatcher advised Officer Hasenfang that the call "had a lot of time on it," meaning that a substantial amount of time had elapsed since the 911 center initially fielded the alarm call. *Id.* Officer Hasenfang finished his dinner and proceeded to plaintiffs' residence. *Id.* at ¶¶ 15-16. He did not activate his siren or MARS lights. *Id.* at ¶ 19. He arrived at plaintiffs' home about 15-20 minutes after receiving the call from dispatch. *Id.* at ¶ 21.

Once Officer Hasenfang arrived at plaintiffs' residence, he surveyed the scene. He did not observe any activity in the vicinity of plaintiffs' home. *Id.* at ¶ 22. Nor did he note any noises or movements suggesting someone was in the house. *Id.* He heard the alarm ringing. *Id.*

Officer Hasenfang testified at his deposition that in his experience, panic alarms often turned out to be false alarms. *Id.* at ¶ 23. Nevertheless, Officer Hasenfang proceeded to investigate. He noticed that a rear screen door was damaged and unsecured. *Id.* at ¶ 24; Hasenfang Dep. at ¶ 18. Behind the damaged screen door was a sliding glass door. Officer Hasenfang noticed scratches around the door's lock. *Id.* The parties dispute whether the door was open. *Cf.* Hasenfang Dep. at ¶ 18 (door was approximately six inches open), *with* Pl's Facts at ¶ 4 (alarm cannot activate if a door is open).[1] Officer Hasenfang did not enter plaintiffs' home at that time. At 9:19 p.m., he retreated to the garage and called for back-up. He advised the dispatcher that he had "an open door on this panic alarm and nobody's answering." *Id.* at ¶ 25.

Between 9:24 p.m. and 9:30 p.m., Officers O' Leary, Montes, Simpson, Tunney and Sergeants Robinson and Flores advised the dispatcher they would assist Officer Hasenfang. All officers arrived at plaintiffs' residence about the same time. Sgt. Robinson arrived last, around 9:32 p.m. *Id.* at ¶ 29. Hasenfang explained the situation to the other officers and they determined to enter plaintiffs' home. *Id.* at ¶¶ 30, 34. While other officers entered plaintiffs' home through the rear door, Officer Tunney stood watch outside the home for any intruders trying to escape. *Id.* at ¶ 34. Upon entry, the officers fanned out to search the premises. *Id.* Hasenfang was first and searched the master bedroom. *Id.* Officer Simpson and Sergeants Robinson and Flores noticed that the house was in disarray and that the hvac floor covers had been removed. *Id.* at ¶ 37. After establishing that the home was secure, the officers gathered in

---

[1] The other responding officers testified that the door was open anywhere from three inches to wide enough for a man to fit through. Robinson Dep., pp. 17-20; Flores Dep., pp. 21-31; Simpson Dep., pp. 15-17, O'Leary Dep. p. 30; Montes Dep., p. 18. Plaintiffs submit an ADT report suggesting the door was closed. However, the report is unauthenticated hearsay.

plaintiffs' family room. Hasenfang emerged from the master bedroom carrying three guns that he discovered laying on the bed. *Id.* at ¶ 38. Officers Simpson and Tunney and Sergeants Robinson and Flores left shortly thereafter; Officers Hasenfang, Montes and O'Leary remained. *Id.* at ¶ 39.

At 9:47 p.m., the police dispatcher informed the remaining officers that plaintiffs' relative would arrive in 20 minutes. *Id.* at ¶ 41. When John Moore, Shirley Scott's brother, arrived, he saw only one police car parked down the block. *Id.* at ¶¶ 42-44. Moore waited outside for five minutes, and then rang plaintiffs' door bell. *Id.* Two white police officers answered the door, and took Moore to the back of the house. *Id.* As the officers showed Moore the rear door and explained that they suspected burglars had entered there, Moore noticed that the house was in total disarray and that the hvac vents had been removed. *Id.* at ¶ 44. Returning to the family room, Moore saw the officers examine plaintiffs' firearms on the dining room table. Hasenfang 11/18/03 Dep. at p. 55. When the officers inquired whether the firearms were registered, Moore responded that they were not. *Id.* Moore never saw a third officer in the home. Pl's Facts at ¶ 45.

Another police officer then arrived. *Id.* The two officers left Moore and went outside to talk to the arriving officer. *Id.* By 10:13 p.m., Officers Montes and O'Leary had left plaintiffs' home and were on their way to the 8th District station to inventory the firearms discovered inside plaintiffs' home. *Id.* at ¶ 47. Meanwhile, Hasenfang completed a police report and gave it to Moore. *Id.* at ¶ 49.

Shirley Scott returned home alone around 11:00 p.m., while Abe Scott remained at the party. *Id.* at ¶ 50. No police were present. Moore was still in the bedroom because every time

4

he tried to leave the room he triggered the motion sensor and set off the alarm. *Id.* Abe Scott arrived around 3:00 a.m. *Id.* at ¶ 51. He discovered that $750 in cash he had given his wife for the mortgage payment was missing from the bedroom along with his wife's jewelry. *Id.* Two mink coats were missing from a closet; the closet door had been run off its tracks.

For purposes of their *Monell* claim, plaintiffs also introduce evidence relating to the Police Department's disciplinary histories and polices as well as the officers' individual disciplinary histories. Each of the defendant police officers has been the subject of multiple civilian complaints. Officer Hasenfang has been the subject of 22 civilian complaints in the last 12 years. *Id.* at ¶ 62. Officer Montes had 19 civilian complaints in 10 years and Officer O'Leary had 21 civilian complaints in 7 years. *Id.* None of these complaints were sustained. *Id.*

Plaintiffs introduce multiple studies and reports on the Chicago Police Department, including the 1997 Report of the Commission on Police Integrity ("the Webb Report") and Internal Affairs Division Biennial Reports from 1993 through 2000. The Webb Report discusses potential changes in officer field training. *Id.* at ¶ 55. The biennial reports record the complaints civilians have lodged against the Chicago Police Department. *Id.* at ¶¶ 56-60. Plaintiffs submit the testimony of Lt. Thomas Tranckitello, an Internal Affairs superintendent, which discusses the process of filing and investigating civilian complaints against Chicago police officers. *Id.* at ¶ 61. Defendants submit the city's official policies regarding disciplinary procedures, as well as statistics detailing the number of incidents individual officers were involved in from 1993 - 2001. Def's Facts at ¶¶ 21-33. Defendants also submit reports detailing the disciplinary activity carried out by the Office of Professional Standards and the Internal Affairs Division from 1993 - 2001. *Id.* at ¶ 27. Plaintiffs concede the accuracy of these policies and both sets of data. However,

plaintiffs contend their evidence demonstrates that the city has adopted a widespread custom in which officers understand that their unlawful acts will not be subject to disciplinary measures.

## DISCUSSION

The gravamen of plaintiffs' complaint is that the defendant police officers illegally entered their home. According to plaintiffs, this unlawful entry led to the seizure of plaintiffs' firearms as well as the theft of cash, jewelry and the mink coats from the master bedroom. Plaintiffs further contend that the theft was caused by the city's policy or custom of failing to discipline and properly train its officers.

## I. Summary Judgment

### A. Legal Standard

A movant is entitled to summary judgment when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Dyrek v. Garvey*, 334 F.3d 590, 597-98 (7th Cir. 2003); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Entry of summary judgment against a party is proper when the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dyrek*, 334 F.3d at 597-98; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. To survive a motion for summary judgment, the nonmovant must do more than merely demonstrate a factual dispute; he must offer evidence sufficient to support a verdict in his favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for

the [nonmoving party]." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986).

### B. Defendants' Evidentiary Objections

Plaintiffs have no evidence to support many of the crucial facts underlying their claims. For example, plaintiffs do not know whether the sliding glass door was open and whether someone entered their home after Shirley Scott triggered the panic alarm, but before Officer Hasenfang arrived. Plaintiffs rely on the ADT alarm report to establish their claims. The plaintiffs attach the ADT report to their own affidavits, attesting that ADT sent them a computerized copy of the report. Defendants argue that the ADT report is unauthenticated, inadmissable hearsay. Evidence relied upon to defeat a motion for summary judgment must be admissible. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). As defendants point out, the report is hearsay insofar as it is used to prove that the sliding glass door was actually closed. Although the ADT record is purportedly a record of ADT's regular monitoring activity, the report is inadmissible unless it is authenticated by ADT's records custodian or a qualified witness. Fed. R. Evid. 803(6); *Fenje v. Feld*, No. 01 C 9684. 2003 WL 22922162, at *24-25 (N.D. Ill. Dec. 9, 2003). Plaintiffs' affidavits are insufficient to save the ADT report from defendants' hearsay objection. Without actual knowledge of ADT's methods or of the contents of the report, plaintiffs are unqualified to establish the authenticity and reliability of the ADT report. *United States v. Fuji*, 301 F.3d 535, 539 (7th Cir. 2002) (computer printouts documenting activity but not made in normal course of business are admissible as long as they are properly transmitted and authenticated by individuals with knowledge). Therefore, the court may not consider the ADT report for purposes of summary judgment.

7

## II. Count I

### A. Illegal Search and Seizure Against Officers Hasenfang, Montes and O'Leary

Plaintiffs contend Officers Hasenfang, Montes and O'Leary violated their constitutional rights by entering their home without prior authorization or a search warrant. It is undisputed that defendant police officers did not have either a warrant or plaintiffs' consent to enter their house. Defendants argue the officers' entry was proper due to exigent circumstances. Defendants assert the unregistered firearms were properly seized because the guns were in plain view while the officers were lawfully in the home. As to plaintiffs' allegations that the officers stole their mink coats, cash and jewelry, defendants point out that plaintiffs have offered no evidence that the officers stole these items. Alternatively, defendants argue conversion of personal property is not a constitutional claim that can be redressed under §1983.

Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371 (1980). However, warrantless searches and seizures are permitted when probable cause and exigent circumstances exist. *United States v. Marshall*, 157 F.3d 477, 481-82 (7th Cir. 1998) citing *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S. Ct. 2091 (1984). Probable cause is determined from the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31, 103 S. Ct. 2317 (1983). Exigent circumstances exist when there is a compelling need for official action and no time to secure a warrant. *Marshall*, 157 F.3d at 482. The relevant question is whether the defendant officers had a reasonable belief that there was a compelling need to act and no time to procure a warrant.

The critical facts on which the defendant officers based their decision to enter are undisputed. *See Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996) (when facts are undisputed,

8

probable cause is a question of law). To decide whether probable cause existed as a matter of law, the court must closely examine the information the officers had at the time of the search as they would appear to a reasonable person in the position of the on-scene officers. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994). Plaintiffs contend the information before the police officers is susceptible to multiple inferences, and therefore the case should proceed to trial. They argue the officers did not have probable cause to enter the home because: (1) almost 50 minutes elapsed between the time the alarm was triggered and the officers' entry; (2) the alarm was accidentally triggered; (3) Officer Hasenfang did not use his siren or MARS lights in responding to the call; (4) Officer Hasenfang did not observe unusual movements inside or outside the home. Plaintiffs cite *Reardon v. Wroan*, 811 F.2d 1025, 1028-29 (7th Cir. 1987). In *Reardon*, summary judgment was reversed in part because the court found there were genuine issues of material fact whether police officers responding to a burglary call at a fraternity house during winter break had probable cause to justify a warrantless entry. *Id.* at 1027, citing *Llaguno v. Mingley*, 763 F.2d 1560, 1565 (7th Cir. 1985).

This case is distinguishable. The admissible supporting materials introduced by plaintiffs do not challenge defendants' version of the facts known to the officers at the scene. Plaintiffs' assertion that the alarm could not be armed when a door was open is pure conjecture. *See Patterson v. Chicago Assoc. for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) (plaintiff's speculation does not create issue of fact). The officers did not know the alarm had been triggered accidentally when they entered plaintiffs' home. *See Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317 (1983) (only the information known to officers at the time of the search is material). Although Officer Hasenfang knew the call had "a lot of time on it," the officers did not know that

the alarm was triggered 50 minutes earlier. Pl's Facts at ¶ 14. The route Officer Hasenfang chose and his decision to finish dinner and not use his siren and MARS lights are collateral facts, immaterial to whether probable cause existed.

Thus, the facts are undisputed. Officer Hasenfang responded to a panic alarm and a 911 call. He was told the call "had a lot of time on it," but did not know how old it was. *Id.* at ¶ 14. Once he arrived at the house, the alarm was still ringing. Although Officer Hasenfang did not see any unusual movements inside or outside the house, he noticed external signs of forced entry: the rear screen door was torn and unsecured, the sliding glass door behind it was open and there appeared to be scratches around the lock. There was no response to his announcement of his presence. These facts establish the officers had probable cause to search plaintiffs' home. *Reardon*, 811 F.2d at 1028-29; *United States v. Jenkins*, 329 F.3d 579, 581-82 (7th Cir. 2003) (officer responding to vague 911 call and unsure if crime was committed inside, properly entered under the exigent circumstances exception when she discovered an unlocked door, heard "standing up and falling down noise," and no one responded to her knock and announce); *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995) (a burglar alarm justified warrantless entry); *United States v. Johnson*, 9 F.3d 506, 509-10 (6th Cir. 1993) (external signs of forced entry and lack of response from occupants inside establish probable cause). The warrantless search was proper under exigent circumstances. *Reardon*, 811 F.2d at 1029-30 (officers entitled to summary judgment on exigent circumstances because the front door was unlocked and they were responding to a burglary call).

Defendants contend plaintiffs' firearms were properly seized because they were in plain view while the officers conducted a legal search. *See United States v. Langford*, 314 F.3d 892,

894 (7th Cir. 2002); *United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996) (plain view justifies seizure if the object's incriminating nature is readily apparent). In response, plaintiffs merely contest the validity of the search. Property that appears to be contraband or evidence of a crime may be seized when it is visible to an officer conducting a lawful search. *Id.* Absent evidence suggesting the firearms were not in plain view, the seizure of the weapons was proper.

### B. Theft of plaintiffs' personal property

Plaintiffs accuse defendant police officers of stealing mink coats, cash and jewelry from their bedroom. Plaintiffs fail to provide any admissible evidence to support their speculative accusation. Given the failure to establish any disputed issue of material fact concerning the purported theft, the court need not reach defendants' argument that theft does not provide a basis for a constitutional deprivation claim under 42 U.S.C. § 1983.

### C. *Monell* Claim

Initially, the court notes that plaintiffs improperly failed to provide pinpoint citations in their Rule 56.1(b)(3)(B) statement of additional facts and instead chose to refer vaguely to the "1993 through 2000 Biennial Reports, exhibit 20." *See* Pl's Facts at ¶¶ 54-60. Local Rule 56.1 statements of fact must include specific citations to the record. Plaintiffs' improper citation to the record makes it difficult to sift through the reports' data and compare the parties' statistical conclusions. Accordingly, the court did not rely on plaintiffs' statistical conclusions when the purported foundation was unclear in plaintiffs' 56.1(b)(3)(B) statement. *See United States v. Norden Enterprises, LLC*, No. 01 C 8968, 2004 WL 42318, at *3-4 (N.D. Ill. Jan. 6, 2004) (the Seventh Circuit has consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment).

Turning to the merits of the claim, plaintiffs contend the illegal search of their home and the theft of their personal property was the result of the city's widespread practice of failing to properly train and discipline its police officers. In order to prove a § 1983 claim against the city, plaintiffs must establish they suffered a constitutional injury caused by an official municipal policy or custom. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). As discussed above, plaintiffs fail to establish a constitutional injury. Therefore, their claim must fail as a matter of law. *Id.*

Even if plaintiffs could establish they suffered an actionable deprivation, they fail to establish a *Monell* claim against the city. Plaintiffs have not alleged their rights were violated as a result of an official policy or decision by a policymaker. Accordingly, they must establish that the city's alleged failure to discipline and train its officers constitutes a "widespread practice that, although not authorized by written law or express municipal policy, causes a constitutional deprivation, and is so permanent and well settled as to constitute a custom and usage with the force of law." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994); *Bd. of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382 (1997) (*Monell* claim cannot be based on simple *respondeat superior*). To trigger municipal liability, plaintiffs must establish that the city adopted or condoned the widespread practice. *Wilson v. City of Chicago*, 6 F.3d 1233, 1240-41 (7th Cir. 1993) A widespread policy is adopted or condoned if the municipality was deliberately indifferent to complaints against its officers and concerns about its training program. *Wilson*, 6 F.3d at 1240-41; *Cornfield by Lewis v. Consolidated High School Dist. 230*, 991 F.2d 1316; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197 (1989).

12

Plaintiffs assert that the city did not aggressively investigate complaints against its officers for illegal searches and seizures and theft, and therefore the officers' behavior was condoned. Plaintiffs advance the Webb Report, the Chicago Police Department Biennial and Annual Reports, and the testimony of Lt. Tranckitello to establish that the city was deliberately indifferent to a widespread practice of unconstitutional searches and theft. Viewed in the light most favorable to plaintiffs, the findings of these reports, as construed in plaintiffs' statement of facts, only demonstrate that the present system is imperfect and that the rate of sustained complaints is low. The reports do not establish that the city was deliberately indifferent to complaints against its officers. *See Wilson*, 6 F.3d at 1240.

Plaintiffs argue that similar data precluded summary judgment in *Garcia v. City of Chicago*, No. 01 C 8945, at *7-8 (N.D. Ill. March 20, 2003). In *Garcia*, the court found that issues of material fact precluded summary judgment on the plaintiff's claim that the city turned a blind eye towards the police department's use of excessive force against citizens. *Id. Garcia* is distinguishable. There, the plaintiff introduced expert testimony that Internal Affairs investigations into excessive force complaints were conducted to protect the image of the police department and were slanted in favor of police officers. *Id.* The plaintiff also introduced evidence suggesting the lengthy duration of investigations was designed to dissuade citizens from filing complaints and to protect officers. *Id.*

Plaintiffs have submitted no direct evidence attacking the methodology of police investigations. *See* Pl's Facts at ¶¶ 58-67. Indeed, Lt. Tranckitello's testimony supports the opposite inference: generally complaints against police officers are properly investigated. Tranckitello Dep. at p. 17-19. Tranckitello's testimony does not suggest the investigatory

13

process is designed to protect officers from constitutional claims. *Id.* Nor does Tranckitello actually state that the officer defendants' disciplinary histories demonstrate the police department was deliberately indifferent to their conduct. Although plaintiffs cite statistical data similar to that used in *Garcia*, because of plaintiffs' inadequate citation to the record, their statistical evidence cannot be placed in context. The 1997 Webb report suggests possible changes in departmental procedure to combat corruption. Statistical data in the Chicago Police Department Reports suggests that officer complaints are investigated, and complaints are regularly sustained. Def's Facts at ¶¶ 27-30.[2]

Plaintiffs fail to produce evidence establishing that the purported widespread practice led to an illegal search of their home and theft of their property. The court is not required to sift through plaintiffs' evidence to find a statistical pattern of undisciplined illegal searches and theft complaints without guidance from the plaintiffs' statement of additional facts. Absent evidence that the purported widespread practice was adopted or condoned, or evidence that the purported practice was the moving force of a constitutional injury, plaintiffs' *Monell* claim fails as a matter of law. *City of Canton*, 489 U.S. at 379, 109 S.Ct. 1197.

## III. Count II

Plaintiffs claim Officers Hasenfang, Montes and O'Leary conspired to violate their constitutional rights by agreeing to illegally search their home and steal personal property. To establish a conspiracy, plaintiffs must demonstrate the existence of an agreement or acts "sufficient to raise the inference of mutual understanding" and a "whiff" of the conspirators'

---

[2]Plaintiffs' 56.1(b)(3)(A) response to portions of defendants' statement of facts does not comply with the local rules. *See* Pl's 56.1(b)(3)(A) Resp. at ¶¶ 27-33. Generally denying the context of statistical data with a general citation to over 200 pages of statistics is insufficient.

14

assent must be apparent in the complaint. *Admunsen v. Chicago Park District*, 218 F.3d 712, 718 (7th Cir. 2000), quoting *Kunik v. Racine County, Wisc.*, 946 F.2d 1574, 1580 (7th Cir. 1991). In their Local Rule 56.1(b)(3)(B) statement of additional facts, plaintiffs include a lone statement touching on their conspiracy claim. Plaintiffs assert "Officer Hasenfang determined that the officers should enter and search the premises." Pl's Facts at ¶ 30. This is insufficient. "[A] claim of conspiracy cannot survive summary judgment if the allegations are vague, conclusory, and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Admunsen*, 218 F.3d at 718.

## CONCLUSION

Plaintiffs have failed to raise a disputed issue of material fact. Defendants are entitled to judgment as a matter of law on all claims.

February 4, 2004

ENTER:

*Suzanne B. Conlon*

Suzanne B. Conlon
United States District Judge